Torrence and Snider *v.* Carbry.

---

TORRENCE and SNIDER *v.* ELIZA A. CARBRY.

The mere fact that T. C., the deceased, held possession of lands at his death, is such a seizin as against his representatives and all others who do not claim by superior title, as will entitle his widow to dower in the lands.

The statute in express terms gives the widow of a deceased, dower in land purchased from the United States, whether the payment therefor has been completed or not. *Held*, that this was a purchase of land from the government within the meaning of the statute. Revis. Co. 232, § 6.

ON appeal from the probate court of Tallahatchie county; Hon. A. H. Bullock, probate judge of Tallahatchie county.

The facts of the case are contained in the opinion of the court, and the points made by counsel.

*Sharkey* and *Withers* for appellants.

In *Tanner* v. *Hicks*, 4 S. & M. 294, this court held " that the retention of title by the vendor is, in effect, the same thing with conveying the title and taking a security by mortgage." See also 10 S. & M. 184. The rights of the widow to dower in

this case, then, are the same as they would have been had Carbry died leaving the land incumbered with a mortgage executed by him before coverture, or one executed during coverture in which the appellee had united. It is well settled that in such a case the widow is only entitled to dower as against the mortgagee or his assignee, on paying one third of the incumbrance. In *Woolbridge* v. *Wilkins*, 3 How. 371, the court say: " But as against the mortgagee, she must go into equity to assert her claim to dower, and redeem by paying one third the debt." See also *House* v. *House*, 10 Paige, Ch. R. 164 ; 1 Hill, S. C. R. 200; 14 Wend. 233; 19 Ib. 162;· 7 Greenl. 41.

It fully appears in the record that the estate of T. Carbry, deceased, is insolvent, and that the debt due for the land was duly probated, and that the administrators paid the balance of purchase-money due out of the personal assets of the estate, in order to protect the land from the enforcement of the vendor's lien. We freely admit that the administrators would have had no right to contest the widow's claim to dower because of the existence of said lien, unless they, representing the interest of the creditors of the insolvent estate, had satisfied said lien out of the assets in their hands. But having paid the balance of the purchase-money out of the assets of the estate, thereby reducing the fund for the payment of debts, we insist that they, representing the interest of the creditors, are entitled to be substituted to the rights of the vendor, and resist the widow's claim for dower, until she contributes her ratable proportion to the reduction of the lien. It would be manifestly unjust to force the creditors of an insolvent estate to relieve the land of an incumbrance, and then permit the widow to assert her claim to be endowed out of the whole of the lands, without any contribution on her part. Had the land been sold in satisfaction of the lien, it is clear that the widow would only have been entitled to one third of the surplus proceeds ; or if part only of the land had been sold, to one third of the land remaining after payment of the purchase-money. This being so, how can it be successfully contended, that when the lien has been satisfied out of a fund in which the widow had no interest, she is entitled to dower in the whole of the land, without contribution ?

Torrence and Snider *v.* Carbry.

*Glenn* for appellee.

Mrs. Carbry applied for dower in the lands of her husband. The administrators resisted it, on the ground that Carbry had never in his lifetime possession of these lands. The proof shows that he held a fee-simple title thereto ; consequently the administrators were not warranted by the facts in so stating. They then insisted that Carbry had not paid the whole purchase-money for the land, but believing the purchase a good one, they had devoted the personalty of his estate to its payment; that the estate was insolvent, and claim that the widow shall be forced to contribute for creditors before she shall be allowed dower.

There are very many good reasons why this defence could not be sustained. One is, however, conclusive. Seizin of the husband during coverture, connected with non-alienation of the wife, is sufficient to establish the claim of the widow. If the widow is to be, made, on such an application by her, a party to proceedings growing out of the conduct of administrators, (questionable, to say the least of them,) if she is to be made a party to an accounting between the real and personal estate, and can be sued for contribution on her own petition for dower, it must indirectly bring before the probate court matter foreign to its jurisdiction, and the proceeding for dower, instead of being a summary one, as required by statute, may become almost interminable. Moreover, there is no evidence in the record that the estate has been declared insolvent by the probate court. See *Randolph* v. *Dorr*, 3 How. 205; *Caruthers* v. *Wilson*, 1 S. & M. 530.

Mr. Justice FISHER delivered the opinion of the court.

This was an application to the probate court of the county of Tallahatchie, by the appellee, as the widow of Thomas Carbry, deceased, for the allotment of dower in the lands of her deceased husband, situate in said county.

The application was resisted by the appellants, as administrators of the estate of the intestate, on the ground that he did not have during the coverture, or at the time of his death, either a complete legal or equitable title to said land, but that the title thereto was still outstanding in the government of the United

States, to whom the intestate was indebted, at the time of his death, in a large sum of money due on account of the purchase of said land, and which sum the appellants aver they have paid out of the personal estate of the intestate.

The evidence introduced on the part of the appellee establishes, beyond all controversy, that the husband was, for a year or more before his death, in the full possession and enjoyment of said land. Admitting that he held possession under the agreement for a title as set up in the appellants' answer, yet the mere fact of possession as against the husband's representatives, and all others who do not claim by superior title, is such a seizin as will entitle the widow to dower. *Randolph* v. *Doss and Wife*, 3 How. 214; 5 Cow. 301. When the government shall attempt to assert their title, or to set it up in opposition to the claim for dower, it will be time enough to examine its merits. If it proves any thing at present, it is, that the administrators have no interest whatever in the controversy. They do not even pretend that it will ever be necessary to resort to the land for the purpose of paying the debt to the United States, for this, according to their own showing, has been paid. It is true, they say, that it was paid out of the personal estate, and it being insolvent, they claim to be substituted, through the action of the probate court, to the title of the government, and to use it for the purpose of defeating the appellee's claim to dower. It is not necessary, in the present controversy, for us to decide on the question of subrogation, as presented by the answer, but only to state, that without regard to the merits of the question, it is one of which the probate court can take no jurisdiction. And we may remark in general terms, that until the jurisdiction shall have been exercised by the proper court, and the appellants adjudged to have the rights of the United States in regard to said land, that they have no claim or right which they can interpose as a defence to the petition. The mere fact of paying the debt due to the government out of the personal estate, would give the appellants no right whatever to the land. The government was in law a preferred creditor, and could insist on payment, as it was made, out of the personal estate.

But it is not our intention to discuss this question, as it is not

properly presented by the record. The statute, in express terms, gives the widow dower in lands purchased from the United States, whether the payment therefor has been completed or not. This was practically a purchase by Carbry's vendor from the government. It is true, it was known as Indian orphan land, and certain Indians will be entitled to the money; yet the government acted as the trustee in making the sale, in collecting the money, and in conveying the title. These several acts make it a sale by the government, and a purchase from the government on credit, within the meaning of the statute. Revised Code, p. 232, § 6.

We are therefore of opinion that there is no error in the decree of the court below.

Decree affirmed.